896 F.Supp. 48 (1995)
L.A.R. SERVICE CENTER, INC., Plaintiff,
v.
WHIRLPOOL CORPORATION, Defendant.
No. 93 Civ. 12280 (MEL).
United States District Court, D. Massachusetts.
June 27, 1995.
*49 John F. Foley, Jr., Wakefield, MA, for plaintiff L.A.R. Service Center, Inc.
Ben L. Fernandez, Liam C. Floyd, Michael A. Fitzhugh, Fitzhugh & Associates, Boston, MA, for defendant Whirlpool Corp.
LASKER, District Judge.
For over twenty years, L.A.R. Service Inc., a Wakefield, Massachusetts company, sold and repaired Whirlpool products such as washing machines and kitchen appliances. In March, 1993, Whirlpool terminated the contract that permitted L.A.R. to service its products. L.A.R. sues Whirlpool, alleging several breach-of-contract claims and violations of Mass.G.L. c. 93A, as well as antitrust violations which are not at issue here. L.A.R. now seeks to amend its complaint to add a claim for fraud in the inducement, alleging that Whirlpool made misrepresentations during the negotiation of its last contract. Whirlpool opposes the amendment and moves for summary judgment with respect to the breach of contract and Mass.G.L. c. 93A claims, contending that it had a contractual right to terminate the agreement under the circumstances alleged and that, furthermore, contractual provisions prohibit the application of Massachusetts law to this dispute and preclude an award of consequential damages.
Until March, 1993, L.A.R. and Whirlpool maintained their relationship through a series of servicing contracts which were renewed every few years. For many years, these contracts designated L.A.R. a "servicing dealer"  one authorized to repair any Whirlpool product regardless of where it was purchased. To build its business, L.A.R. developed relationships with a number of retailers who sold Whirlpool appliances but referred their customers to other companies for servicing.
In May, 1992, L.A.R. received a letter from Jim Evans, a Whirlpool manager, who erroneously claimed that, under its contract, L.A.R. was not permitted to perform work for customers referred by other stores. L.A.R. contends that this matter was not cleared up until August 5, 1992. In November, 1992, L.A.R. and Whirlpool prepared to enter into a new agreement which was to become effective January 1, 1993, the day following the expiration of their then-existing contract.
L.A.R. contends that during their negotiations, Whirlpool claimed that a new policy prohibited area retailers from performing repairs on Whirlpool machines sold by other stores. The new contract offered by Whirlpool provided, therefore, that L.A.R. was to become a "self-servicing dealer", one authorized to repair only those appliances it had sold. L.A.R. claims that it signed the contract with the understanding that every servicing dealer in the area was being converted to a self-servicing dealer. Despite the new limitation, L.A.R. admits, it continued to take servicing referrals from other retailers. *50 Complaint at Paras. 20-21. Moreover, Whirlpool admits that, on occasion, it referred repair work to "self-servicing dealers", including L.A.R., when its own repair service was very busy.
After Whirlpool became aware that L.A.R. was continuing to service machines sold by other retailers, it terminated the 1993 Agreement in March, 1993.

I. L.A.R.'s Motion to Amend the Complaint
Seeking to add one count of fraud in the inducement, L.A.R. moves to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a) and Local Rule 7.1. L.A.R. alleges that it has recently discovered that, despite Whirlpool's representation during the negotiation of the 1993 Agreement, at least one company has been permitted to retain its "servicing dealer" status. L.A.R. claims that, had it known that not every servicing dealer was asked to become a self-servicing dealer, it would not have agreed to sign the 1993 contract.
Whirlpool counters that (1) L.A.R. has not shown that it relied on the alleged misinformation to its detriment, (2) Whirlpool's contracts with other dealers are irrelevant to L.A.R.'s business, and (3) an integration clause contained in the 1993 Agreement prevents L.A.R. from claiming that it reasonably relied upon any earlier oral assurances.
The last of these points has merit. Under Massachusetts law, which the parties agree is controlling, fraudulent inducement requires reasonable reliance by the "inducee". Elias Brothers Restaurants v. Acorn Enterprises, 831 F.Supp. 920 (D.Mass.1993). In Elias Brothers, a franchisee claimed that several false, oral assurances induced him to enter into a series of contracts to his detriment. Among these false promises were guarantees of low-cost supplies and assurances of expansion by the franchisor. The contracts at issue, however, contained an integration clause as well as disclaimers that success was guaranteed by the franchisor. Magistrate Judge Collings held that "the direct, precise terms" of the franchise agreements at issue barred any reasonable reliance on prior oral representations by the franchisor: "To the extent that the [franchisees], experienced in business, relied upon prior oral representations, their reliance was unreasonable as a matter of law. The language of the franchise agreements was more than sufficient "to trigger alarm" any and all earlier oral promises or representations were expressly disclaimed." Id. at 926.
In the case at hand, there is no provision in the 1993 Agreement that its terms are contingent upon a wide-reaching "self-servicing" policy by Whirlpool, although L.A.R. now contends that it was Whirlpool's assurances that such a policy existed which induced it to sign the contract. Moreover, Paragraph XII of the 1993 Agreement provides:
This Service Agreement shall constitute the sole agreement between the parties hereto in respect to the subject matter of this Service Agreement, and no other agreement, understanding or representation of any kind made before or at the execution of this Service agreement, whether written or otherwise, shall bind the parties in respect to the subject of this service agreement.
L.A.R.'s contention that it reasonably relied on misrepresentations by Whirlpool that every servicing dealer in the territory would become a self-servicing dealer is undermined by this provision, which is enough to trigger the "alarm" that Magistrate Collings refers to in Elias Brothers. Therefore, L.A.R. could not have reasonably continued to rely on oral representations by Whirlpool in the face of the integration clause contained in the 1993 Agreement. See also Rosenberg v. Pillsbury Co., 718 F.Supp. 1146 (S.D.N.Y. 1989) ("Because plaintiffs had the advantage of both prior experience in the business and proper representation before signing the second franchise agreement, and the franchise agreement and offering circular contained explicit disclaimers, their alleged reliance was unreasonable; their fraud claims fail as a matter of law.").
Because, for the reasons described above, L.A.R.'s proposed fraud-in-the-inducement claim could not withstand a motion to dismiss, L.A.R.'s motion to amend is denied as *51 futile. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

II. Whirlpool's Motion for Partial Summary Judgment
Whirlpool moves for judgment in its favor on Counts I, II, III, IV and VII of L.A.R.'s Complaint.[1] Whirlpool offers several grounds for its motion.
First, Whirlpool contends that because L.A.R. breached the 1993 self-servicing agreement by repairing products sold by other retailers, no genuine question of material fact exists as to whether Whirlpool was entitled to terminate the contract, which provides for immediate termination "in the event Service Company fails to render quality services, or breaches in any manner the provisions of this Service Agreement, or defaults in the performance or observance of any of the obligations, agreements or conditions." Paragraph V, 1993 Agreement.
L.A.R. admits that it serviced appliances sold by other retailers after January 1, 1993, but asserts that it performed the work under "economic duress", a proposition for which it cites no authority. L.A.R. also characterizes the 1993 agreement as unconscionable, and contends that Whirlpool's bargaining power dwarfed its own. Finally, L.A.R. suggests that because Whirlpool occasionally referred repair work to it and other self-servicing dealers after January 1, 1993, Whirlpool had no right to object when L.A.R. accepted referrals without Whirlpool's authorization. These arguments are meritless.
It is undeniable that Whirlpool's decision to convert L.A.R. to a self-servicing dealership made it impossible for L.A.R. to take advantage of business relationships it developed with other retailers over a period of years. However, the facts alleged by L.A.R. do not amount to legal unconscionability. Moreover, that L.A.R. accepted the unauthorized repair work in order to "try to preserve the relationship (with other retailers) it had worked diligently to create and to maintain its own operation," does not excuse its breach of the 1993 Agreement. There is no dispute that under the clear terms of the 1993 Agreement, L.A.R. was not authorized to repair products it had not sold. Yet L.A.R. did so without justification. Therefore, Whirlpool's termination of the 1993 Agreement was not a breach of contract, but a measure sanctioned by the parties' agreement. Because no genuine issue of material fact exists as to whether Whirlpool was authorized to terminate the 1993 Agreement, Whirlpool is entitled to summary judgment on Count III of the complaint.
Second, Whirlpool argues that because the 1993 agreement contains a clause specifying that Delaware law controls the construction, interpretation and enforcement of the contract, L.A.R.'s claims under Chapter 93A of the Massachusetts General Laws should be dismissed. In Northeast Data Systems v. McDonnell Douglas, 986 F.2d 607 (1st Cir.1993), Judge Breyer addressed this question under similar circumstances. There, a distribution contract specified that it was to be interpreted according to California law. The Court determined that all of the plaintiff's claims, except one (which alleged fraud in the formation of the contract), were "embroidered breach of contract claims", and were therefore covered by the contractual choice-of-law provision. Among the claims barred was a Mass.G.L. c. 93A claim alleging that the defendants acted "wilfully" or "knowingly": Judge Breyer found that the `state of mind' or `bad motive' allegations did not take the claims outside the scope of contractual choice-of-law language that said California law would govern `the rights and obligations of the parties' with respect to the agreement. Id. at 610-11.
Here, the Chapter 93A claims described in Counts II and IV are nothing more than restatements of L.A.R.'s breach-of-contract claims. Under Northeast Data Systems, therefore, they are barred by the parties' choice of Delaware law. L.A.R. asserts unpersuasively that the choice-of-law provision is invalid in light of the disparity in the parties' bargaining power. However, as *52 Judge Breyer noted in Northeast Data, in the absence of a conflict with public policy, Massachusetts honors choice-of-law provisions in contracts. Id. at 610; See also Morris v. Watsco, 385 Mass. 672, 433 N.E.2d 886, 888 (1982). And "in this diversity case, so must we." Northeast Data, at 610. Nothing suggests that the provision at issue creates a conflict with any Massachusetts policy.
Although the parties don't address the issue, it should be noted that Count II does not relate to the 1993 Agreement but rather to the contract that existed between Whirlpool and L.A.R. in 1992, when Whirlpool allegedly attempted to restrict L.A.R.'s activities to those of a "self-servicing dealer", despite the fact that, at that time, L.A.R. was still a full "servicing dealer". However, because the 1992 agreement contained the same choice-of-law provision that bars Count IV, Whirlpool is entitled to summary judgment on both counts.
Third, Whirlpool asserts that a provision of the 1993 Agreement eliminates L.A.R.'s right to recover consequential damages. Because all of the damages sought by L.A.R. are consequential, Whirlpool argues, judgment should be entered in its favor on Counts I, II, III and IV. Like Count II, Count I of the complaint concerns the 1992 contract; the remaining claims relate to the 1993 Agreement.
Both the 1992 and 1993 contracts contained the following provision:
Neither Whirlpool nor Service Company shall, by reason of the cancellation or non-renewal of the Agreement be liable to the other for any consequential damages, including but not limited to, compensation, reimbursement or damages on account of the loss of prospective profits on anticipated services or on account of expenditures, investments, losses, or on commitments in connection with the business or goodwill of Whirlpool or Service Company or otherwise.
Mass.G.L. c. 106, § 2-719(3)  or Uniform Commercial Code § 2-719(3)  provides that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." Although the Code does not apply to service contracts like the two at issue here, L.A.R. offers no persuasive reason why the provision should not be enforced. In addition to the grounds for summary judgment already discussed, therefore, the parties' contractual limitation precludes a recovery of consequential damages under Counts III and IV, both of which address Whirlpool's termination of the 1993 agreement.
However, the limitation does not apply under the circumstances alleged by L.A.R. in Counts I and II. There, L.A.R. asserts that Whirlpool wrongfully changed its status to that of a self-servicing dealer for some months in 1992, when, in fact, L.A.R. was a servicing dealer until December 31 of that year. As a result, L.A.R. alleges, Whirlpool's consumer hotline failed to refer customers to L.A.R. for repair work, as it should have done under the agreement then in existence. It is for the resultant loss of revenue, not for any loss stemming from a "cancellation or non-renewal" of the 1992 contract, that L.A.R. seeks an award of consequential damages. The contractual limitation, therefore, does not preclude an award of consequential damages with respect to Counts I and II. As noted above, however, Whirlpool is entitled to summary judgment on Count II, which invokes Massachusetts Law. Accordingly, Whirlpool's motion for summary judgment is denied only as to Count I.

* * *
L.A.R.'s motion to amend the complaint is denied. Whirlpool's motion for summary judgment is granted with respect to Counts II, III and IV, and is otherwise denied. It is so ordered.
NOTES
[1] Because the parties have agreed that the antitrust violations alleged in the complaint are to be addressed together in a separate set of papers, Whirlpool's motion is denied without prejudice as to Count VII, which alleges such a violation.