Fecteau, J.
This matter is before the court on the motion of the defendants, Freightliner of Hartford, Inc. (“Freightliner of Hartford”) and its president Lindy Bigliazzi (“Bigliazzi”), for summary judgment. The allegations raised in plaintiff Robert D. Laboeuf s complaint arise from the plaintiffs purchase of two Freightliner trucks[1] from the defendants between the years 1996 and 1999. In his complaint, plaintiff has brought claims for deceit (Counts I and II), violation of G.L.c. 231, Sec. 85J (Counts III and IV), G.L.c. 93A (Counts V and VI) and Conn. Gen. Stat. Sec. 42-110b (Counts VII and VTII) against both Bigliazzi, individually, and Freightliner of Hartford.
In their present motion for summary judgment,[2] the defendants assert that: 1) this court lacks personal jurisdiction over them; 2) the statute of limitations which underlies Counts I and III [sic, see fn. 2] has run; 3) the Court does not have subject matter jurisdiction over the Massachusetts Statutory Claims as stated in Counts III through VI because the parties contractually agreed Connecticut law would govern their relationship; and 4) the Court does not have subject matter jurisdiction over plaintiffs G.L.c. 93A claims as stated in Counts V and VI because the actions complained of did not occur primarily or substantially within Massachusetts. In his opposition to defendants’ motion, plaintiff contends that the defendants are subject to the jurisdiction of this court since (1) Freightliner of Hartford regularly solicits business from Massachusetts residents, and (2) Bigliazzi’s alleged intentional and fraudulent conduct was directed into Massachusetts at a Massachusetts resident. The plaintiff also contends that defendants’ request for judgment on plaintiffs Massachusetts Statutory Claims should be denied because (1) the Connecticut choice-of-law provision in the two contracts does not apply to plaintiffs tort-related claims challenging the validity of the formation of said contracts, and (2) there is a genuine issue of material fact as to whether the conduct that forms the basis of plaintiffs Chapter 93A claims occurred primarily and substantially in Massachusetts. For the following reasons defendants’ motion for summary judgment is DENIED.

FACTUAL BACKGROUND

Bigliazzi, the president of Freightliner of Hartford, is a Connecticut resident, domiciliary and who works exclusively within the state. Freightliner of Hartford, incorporated in the State of Connecticut as a licensed dealer of trucks and tractors manufactured by Freightliner, has as its sole and principal place of business its location in East Hartford, Connecticut. The plaintiff is a resident of Webster, MA and operates a trucking business from there or New Hampshire, where he registers the trucks he drives.
*247 Freightliner of Hartford has never maintained a sales office, repair facility, or bank account in Massachusetts. Freightliner of Hartford does conduct limited advertising regarding the products and services it sells in Massachusetts. The company advertises in Massachusetts by way of regional trade journals, quarterly mailings, unsolicited phone calls to potential customers, sending salesman to solicit business, and by sending flyers/leaflets to truck stops in the state.
Sometime in early December 1996, the plaintiff visited the defendants’ place of business in Hartford, Connecticut. Plaintiff arrived at the defendants’ place of business by accident, having mistakenly thought that it was another truck manufacturer’s dealership and gone there for parts for the truck he was driving at the time. While at Freightliner of Hartford plaintiff saw a model of the 1997 Century Tractor (“1997 Century”), a new model line that had been recently introduced by Freightliner. Upon plaintiffs expressing an interest in the 1997 Century, he was directed to Bigliazzi who subsequently inspected plaintiffs truck to determine its trade-in value. After his inspection, Bigliazzi told plaintiff his estimation of the trade-in value of his truck. Bigliazzi, then told plaintiff that he was expecting to have a 1997 Century with low mileage in his lot sometime in the following several days and that someone from Freightliner of Hartford would call plaintiff at his home in Webster, MA when it arrived.
Several days later plaintiff was in fact called (at least once) at home by someone from Freightliner of Hartford to let him know that the 1997 Century had arrived. Subsequently, plaintiff drove to Freightliner of Hartford to inspect the 1997 Century. At this time plaintiff was quoted a price for the 1997 Century included in which was the trade-in amount for his old truck. Plaintiff was also informed, either while at Freightliner of Hartford or by phone, that the truck had low mileage because its former owner had suffered a heart attack after having driven the vehicle for only a few months. The truck had in fact been traded in by its first owner because of recurring problems associated with the new 1997 Freightliner Century Line. As a result of the information provided to him by Freightliner of Hartford, plaintiff decided to purchase the 1997 Century and did in fact take possession of said vehicle on December 18, 1996.
It is disputed between the parties exactly when, by what means, and from whom the plaintiff became aware of the misrepresentation as to the previous owner’s reasons for trading in the 1997 Century. The defendants assert that they became aware of the misrepresentation prior to plaintiff taking possession of the vehicle or immediately thereafter; according to both defendants, they informed the plaintiff of the misrepresentation and gave him a chance to back out of the deal. The defendants also contend that the misrepresentation was made by one of their salesmen or a sales manager at the dealership rather than by Bigliazzi over the phone. The plaintiff, however, contends that the offensive statement was in fact made by Bigliazzi over the phone and that the plaintiff only learned of the defendants’ misrepresentation sometime after taking possession of the vehicle when, by chance, he spoke to the previous owner. Plaintiff has also submitted evidence that someone from the defendants’ office made at least two, and possibly as many as six, phone calls to plaintiffs home during mid-December 1996.
By February 1997, the plaintiff, after having brought the 1997 Century to Freightliner of Hartford and other places for trouble-shooting and repairs on many occasions, decided to trade in the 1997 Century for a more traditional Freightliner Classic Model (“1997 Classic”). Bigliazzi personally negotiated with Freightliner LLC to provide the plaintiff with a substantial additional trade-in allowance on the 1997 Century as a goodwill gesture, and plaintiff did in fact purchase a 1997 Classic in March 1997.
In September 1998, the plaintiff decided to trade in the 1997 Classic for a 1998 Freightliner Century Model (“1998 Century”). At the time, the plaintiff stated that he had talked to other dealerships about purchasing a 1998 Century but chose to purchase it through the defendant because he wanted to “give Freightliner-Hartford the business.” Bigliazzi also acted as the salesman on the plaintiffs September 1998 purchase.
After driving the 1998 Century for approximately six months the plaintiff decided to trade it for another Classic model. As a result, in April of 1999, the plaintiff purchased a new 1999 Freightliner Classic Model (“1999 Classic”) from Freightliner of Hartford. The salesman for this transaction, most of which was negotiated over the telephone, was Steve Farley (“Farley"). Prior to the consummation of the sale, Farley discussed with the plaintiff by phone the specific tractor desired by the plaintiff, as well as the specific terms of any future sale. The phone conversations between Farley and the plaintiff occurred both while the plaintiff was at home and on the road.
The 1999 Classic was a new vehicle and was fully inspected at the Freightliner factory, including a full alignment, before being delivered by Freightliner LLC to the dealership for sale. The 1999 Classic was only driven by Freightliner of Hartford employees at slow speeds as required to complete the prep work before it was delivered to the plaintiff.
Even though he was aware that the Freightliner factory had previously aligned and balanced the 1999 Classic, the plaintiff, before taking possession of the 1999 Classic, asked Farley to have the tractor aligned and the wheels balanced again. Farley agreed to the plaintiffs request, and arranged for Freightliner of Hartford’s Service Department (“Service Department”), which did not have the necessary equipment, to have the work performed by an outside vendor. *248 When the 1999 Classic was delivered to Freightliner of Hartford by the transportation service arranged for by Freightliner LLC, the driver informed Farley that the “Ubolts” were loose. As a result of the driver’s comment, Farley consulted a technician in the Service Department who concluded that the 1999 Classic should be sent to an outside vendor for a full three-axle alignment. The plaintiff was informed that Freightliner of Hartford would not be performing the work.
Not long after taking possession of the 1999 Classic, plaintiff called Freightliner of Hartford to tell Farley that he thought the tractor was “leaning” and he was experiencing vibrations. Farley advised him to bring the tractor to freightliner of Hartford, and soon thereafter the plaintiff did bring the tractor, without a trailer or a load attached, to the dealership. When the plaintiff brought the 1999 Classic to Freightliner of Hartford the tractor was inspected by the Service Department’s Foreman, Mike MacCauley (“MacCauley”). After its arrival, a series of measurements of the tractor were taken by MacCauley to determine whether it was leaning or otherwise mal-aligned. MacCauley also took the 1999 Classic for a test drive to determine whether there was in fact any leaning. According to MacCauley, all of the measurements of the 1999 Classic were within the tolerances published by Freightliner LLC. Further, MacCauley was unable to find anything which might have caused the vibrations complained of by the plaintiff. Neither MacCauley nor Farley observed anything out of the ordinary about the 1999 Classic. At the conclusion of the inspection, Farley suggested that the plaintiff take the 1999 Classic to another Freightliner dealer for a “second opinion.”
After driving the 1999 Classic on three or four cross country trips, the plaintiff, heeding Farley’s earlier advice, took the tractor, in late June 1999, to Tri-State Freightliner in Southboro, Massachusetts complaining of severe vibrations. Upon this second inspection it was learned that the 1999 Classic’s frame was twisted and its front axle was bent. Freightliner LLC’s Regional Service Manager, Ed Blake (“Blake”), arranged for an independent repair facility in Massachusetts to straighten both components and to completely realign the 1999 Classic’s chassis in September of 1999. Blake authorized all of the repair work, including a tractor rental for the plaintiff while the 1999 Classic was being worked on, under the Freightliner LLC warranty program.
In late September or early October 1999, the plaintiff called Freightliner of Hartford and spoke to Farley about possibly trading in the 1999 Classic. Once again Bigliazzi worked with Freightliner LLC in attempt to offer the plaintiff a substantial extra trade-in allowance for the 1999 Classic. However, nothing could be worked out to the satisfaction of both parties. As of the present time, the plaintiff continues to drive the 1999 Classic.
Each of the contracts signed by the plaintiff contains a “choice of law” clause, so called, stating that:
This Contract shall be governed by the laws of the state in which the Seller’s place of business is located.

DISCUSSION

Summary judgment shall be granted where there are no issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P.56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that, therefore, she is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). If the moving party establishes the absence of a triable issue, in order to defeat a motion for summary judgment, the opposing party must respond and allege facts which would establish the existence of disputed material facts. Id.
A judge, when ruling on a motion for summary judgment must consider “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, in determining whether summary judgment is appropriate.” Flesner v. Technical Communications Corporation et al., 410 Mass. 805, 807 (1991). Where no genuine issue of material fact exists, “the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Id., citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
In this case, defendants allege that there are no issues of material fact as to plaintiffs claims and that as such they are entitled to a judgment as a matter of law on all remaining counts. The plaintiff contends otherwise.
I. Personal Jurisdiction
G.L.c. 223A, Sec. 3 states in relevant part that:
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in the law or equity arising from the persons . . . (c) causing tortious injury by an act or omission in this commonwealth.
The exercise of personal jurisdiction, by a Massachusetts Court, over a foreign defendant is proper only when (1) the terms of the Commonwealth’s longarm statute are met, and (2) the constitutional requirements of due process are satisfied. See Connecticut Nat’l Bank v. Hoover Treated Wood Products., 37 Mass.App.Ct. 231, 233 (1994). Once personal jurisdiction has been challenged by the defendant, plaintiff bears the burden of establishing sufficient facts upon which to predicate personal jurisdiction under the longarm statute. See Cunningham v. Ardrox, Inc., 40 *249 Mass.App.Ct. 279 (1996), citing Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). The delivery in Massachusetts, however, by mail or telephone of an intentional false statement originating outside of the state, followed by reliance in Massachusetts, is considered to be an act within the Commonwealth for jurisdictional purposes. See Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1972); Burtner v. Burnham, 13 Mass.App.Ct. 158, 162-63 (1982) (the court found that a Massachusetts’ plaintiff having received from a New Hampshire defendant erroneous statements by both telephone and mail, related to the sale of real estate was enough to bring said defendant within the Massachusetts longarm statute, G.L.c. 223A, . . . Sec. 3(c)).
Defendants, in their motion for summary judgment, assert that the alleged misrepresentations made to plaintiff via telephone are not sufficient by themselves for this court to sustain longarm jurisdiction over plaintiffs claim. In his complaint, plaintiff asserts that “Bigliazzi knowingly made false statements to plaintiff while he was in Massachusetts, intending that plaintiff rely on [said] statements to his detriment [and that] Hartford Freightliner systematically and continuously advertises and otherwise conducts business in Massachusetts.” In plaintiff’s Opposition to the Defendants’ Motion for Summary Judgment he relies specifically on G.L.c. 223A, Sec. 3(c) in contending that this court does in fact have personal jurisdiction to hear this claim. This court, then, need only determine whether it has personal jurisdiction to hear plaintiffs claim under G.L.c. 223A, Sec. 3(c).[3]
In this case, plaintiff has produced evidence from which a reasonable juror could infer that he was contacted, both at home and while he was on the road, by telephone on at least several occasions by the defendants and their employees between the years 1996 to 1999. The plaintiff claims further that during the course of these phone conversations, during which he was in Massachusetts, the defendants and their employees made misrepresentations to him which were intended to induce him into purchasing vehicles from the defendants’ dealership in Hartford, Connecticut. Finally, plaintiff contends that due to said misrepresentations he was in fact induced to travel to the defendants’ place of business in Connecticut and purchase the vehicles on which his present claims are based. Based on the record before this court, reasonable persons could in fact find that the out of state defendants in this matter acted to cause tortious injury by an act or omission in this commonwealth and as such are subject to the jurisdiction of this court. A genuine issue of material fact thus existing forecloses the grant of summary judgment.
II. Statute of Limitations
In Counts I-IV of his complaint, the plaintiff alleges that the defendants have committed common law deceit and violated G.L.c. 231, 85J (prohibiting the sale of personal property through deceit or fraud).[4] Both of said claims must be brought within three years after the cause of action on which they rely has accrued.[5] Defendants assert that both Counts I and II . should be dismissed because plaintiff failed to bring either of said claims within the requisite three-year period.
“The legislature has not defined when a cause of action accrues for purposes of the statute of limitations.” Riley v. Presnell, 409 Mass. 239, 243 (1991). “That determination, therefore, ‘has long been the product of judicial interpretation in this Commonwealth.’ ” Id., citing Franklin v. Albert, 381 Mass. 611, 617 (1980).
In this Commonwealth, courts use the “discovery rule” to determine when a claimant’s negligence claim has accrued for the purposes of a particular statute of limitations. Id.; see also Hendrickson v. Sears, 365 Mass. 83, 89-90 (1974), and Friedman v. Jablonski, 371 Mass. 482, 485-86 (1976). “The discovery rule is designed to postpone the accrual date of causes of action when the defect is ‘inherently unknowable.’ ” Mansfield v. GAF Corp., 5 Mass.App.Ct. 551, 555 (1977), citing Hendrickson v. Sears, 365 Mass. 83, 90 (1974). Under the discovery rule, it is not required that “a plaintiff have notice of breach of a duty before a cause of action may accrue, but la plaintiff is required to] have (1) knowledge or sufficient notice that they were harmed and (2) knowledge or sufficient notice of what the cause of harm was.” Bowen v. Eli Lilly & Co., 408 Mass. 204, 208 (1990).
“The reasonable person who serves as the standard in this evaluation, however, is not a detached, outside observer assessing the situation without being affected by it.” Riley, 409 Mass. at 245. “Rather, it is a reasonable person who has been subjected to the conduct which forms the basis for the plaintiffs complaint.” Id.; see also Bowen v. Eli Lilly & Co., 408 Mass. 204, 208 (1990) (noting that the court should look at “a reasonable person in the position of the plaintiff’). To prevail on summary judgment then, the defendant in this matter must show that there are no genuine disputes as to whether the plaintiff should have known of its cause of action on or before January 10, 1997.
Defendants claim that since the former owner’s name was on the title certificate for the 1997 Century given to the plaintiff, he possessed the means to acquire those facts on which Counts I and II are based when he took possession of the vehicle on December 18, 1996. Under the defendant’s logic, since the plaintiffs cause of action accrued on December 18, 1996 and plaintiff filed his complaint on January 10, 2000, he, therefore, failed to bring his claim within the three-year statute of limitations. Defendant’s argument, however, ignores the standard to be used in this court’s evaluation, namely, a reasonable person in the position of the plaintiff. See Riley, 409 Mass. at 245.
*250 In this case, plaintiff claims that the defendants lied to him about the 1997 Century’s prior owner’s reasons for trading in the vehicle and that said misrepresentation directly led to his buying the faulty truck. The simple fact that the name of the previous owner of the 1997 Century appears on the title certificate given to the plaintiff does not mean that plaintiff should be charged with notice that he has been harmed by the defendant’s alleged misrepresentations at the time of sale, such that his cause of action maybe said to have accrued when he took possession of the vehicle, or any duty to inquire of the prior owner as to the true reasons the vehicle was sold. Until the recurring problems arose with the 1997 Century, the plaintiff had no reason to mistrust the defendant’s stated version of why the truck’s former owner had traded the vehicle. In these circumstances, it would be fair to infer that a reasonable person in the same position as the plaintiff could not be said to have either knowledge or sufficient notice that he was harmed, or who in fact harmed him, simply because the name of the truck’s previous owner was made known to him. The defendants are not entitled to summary judgment on this ground as there is a sufficient and genuine issue of fact as to whether the plaintiffs cause of action accrued on or after January 10, 1996 such that his claim is not barred by the statute of limitations.
III. Contractual Choice of Law
Plaintiff, in Counts III-VI of his complaint, has brought claims for violations of G.L.c. 231, 85J[6] and G.L.c. 93A, sec. 2.[7] Defendants assert that said counts must be dismissed because each of the contracts signed by the plaintiff, contains a “choice of law” clause specifically stating that the ”[c]ontract shall be governed by the laws of the state in which the Seller’s place of business is located.” In this case, defendants contend that, since the seller’s/defendant’s place of business was in Connecticut, the plaintiff is barred from bringing any claims based solely on Massachusetts Statutes.
“Massachusetts law has recognized, within reason, the right of the parties to a transaction to select the law governing their relationship.” Morris v. Watsco, Inc., 385 Mass. 672, 674 (1982). Thus, a forum selection clause which is fair and reasonable should be enforced. Jacobson v. Mailbox Etc. U.S.A., Inc. 419 Mass. 572, 574-75 (1995). Where, however, a plaintiffs claim “concerns the validity of the formation of the contract [rather than an alleged breach], it cannot be categorized as one involving the rights or obligations arising under [said] contract.” Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Company, 986 F.2d 607, 611 (1993). Hence, a plaintiffs claims alleging fraud and deceit in the formation of the contract may be said “to fall outside the contracts choice-of-law provision.” Id.
All of plaintiffs claims are based on the alleged receipt of misrepresentations by the plaintiff prior to his entering into purchasing agreements with Freightliner of Hartford for the sale of the two trucks in question. The plaintiff, in this case, has not sought damages related to any of the defendants’ actions after the relevant contracts were entered into. If plaintiff was in fact seeking damages based upon any allegations that the defendants had breached the contracts in question, the “Choice of Law" clauses would apply and said claims could only be brought in Connecticut. In this case, however, since plaintiff has only alleged fraud and deceit in the formation of said contracts his claims do in fact fall outside the contract’s choice of law provisions and as such may be heard by this court.
IV. Counts V and VI are not Barred as a Matter of Law since Reasonable Persons Could Find that the Conduct Complained of Took Place Primarily and Substantially in Massachusetts.
G.L.c. 93A, Sec. 11 states in relevant part that:
No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth.
[Emphasis added.]
“An action under G.L.c. 93A does not lie — and did not lie when the salient events occurred — unless the actions or transactions claimed to violate c. 93A occurred ‘primarily and'substantially in the commonwealth.’ ” Makino, U.S.A., Inc. v. Metlife Capital Credit Corp., 25 Mass.App.Ct. 302, 308 (1988).
The defendants claim that the conduct alleged to have violated G.L.c. 93A did not occur primarily and substantially in Massachusetts because any phone calls made to the plaintiff by the defendants and their representatives were made from Connecticut. However, the alleged intent of the phone calls was, through misrepresentations and fraudulent statements, to induce a Massachusetts’ resident, living in Massachusetts at the time, to purchase two trucks from the defendants’ dealership in Connecticut. This is sufficient to raise a triable issue on this element of a c. 93A claim. See generally Makino, U.S.A., Inc. v. Metlife Capital Credit Corp., 25 Mass.App.Ct. 302, 308 (1988); compare Bushkin Associates, Inc. et al. v. Raytheon Company, 393 Mass. 622 (1985).

Order

For the foregoing reasons, it is hereby ORDERED that the motion of the defendants, Lindy Bigliazzi and Freightliner of Hartford, Inc., for summary judgment is DENIED.

 Plaintiff purchased both a 1997 Freightliner Century Model and a 1999 Freightliner Classic Model from the defendant.

 The defendants first moved to dismiss the plaintiffs complaint, in its entirely, for lack of personal jurisdiction and, alternatively, with respect to counts III-VI, for contract choice-of-law reasons. As a result of the hearing on September 8, *251 2000, the court converted the motion to one under Rule 56 and gave the parties additional time to supplement the motion record. The parties filed supplements to their memoranda and supporting affidavits. The defendant added additional grounds for consideration, including the Statute of Limitations with respect to counts I and II. (Although the defendants’ motion papers refer to counts I and III as being impacted by a limitations argument, the reference appears likely to be a typographical error, since counts II and IV allege the same causes as against the corporate defendant as counts I and III does against the individual.) The court held a further hearing on February 9, 2001.

 While plaintiff has only asserted personal jurisdiction under G.L.c. 223A, Sec. 3(c), it also seems apparent to this court that reasonable persons could infer that jurisdiction would be appropriate under Sec. 3(a) of said act. Under Sec. 3(a) “a court may exercise personal jurisdiction over a person . . . transacting any business in this commonwealth.” The purposeful and successful solicitation of business from a resident of Massachusetts by a defendant or its agent will suffice to satisfy the “transaction of business” clause in the longarm statute. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). In this case, it is undisputed that the defendants advertise in Massachusetts by way of regional trade journals, quarterly mailings, unsolicited phone calls to potential customers, sending salesman to solicit business, and by sending flyers/leaflets to truck stops in the state. However, since plaintiff only contends that jurisdiction is appropriate under Sec. 3(c), this court need not discuss in depth the applicability Sec. 3(a) to these facts.

 Given the possibility that the defendants’ motion for summary judgment based upon this ground is intended to address counts I and III as referred to in their motion, the discussion covers both causes of action due to the fact that misrepresentation is the core element of each. See fn. 2.

 G.L.c. 260, Sec. 2A states that “[elxcept as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues.”

 G.L.c. 231, Sec. 85J states that “[w]hoever, by deceit or fraud, sells personal property shall be liable in tort to a purchaser in treble the amount of damages sustained by him.”

 G.L.c. 93A, Sec. 2 states in relevant part that “a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful...”