# United States Court of Appeals
## For the First Circuit

No. 22-1451

FRED KLEINER,
on behalf of himself and all others similarly situated,

Plaintiff, Appellant,

v.

CENGAGE LEARNING HOLDINGS II, INC.; CENGAGE LEARNING, INC.,

Defendants, Appellees,

DOE AFFILIATED ENTITIES 1-10,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Kayatta, Lynch, and Gelpí,
Circuit Judges.

Richard Weingarten, with whom David Slarskey, Slarskey LLC, Edward V. Colbert III, David Koha, and Casner & Edwards, LLP, were on brief, for appellant.
Michael R. Gottfried, with whom Duane Morris LLP was on brief, for appellees.

April 19, 2023

**KAYATTA**, **Circuit Judge**. Fred Kleiner claims that Cengage Learning Holdings II, Inc., and Cengage Learning, Inc. (collectively, "Cengage") committed unfair and deceptive business practices under Massachusetts law by intentionally obfuscating information regarding the sales of his published books. Cengage parries that a choice of law clause in its contract with Kleiner bars his suit against it. The district court agreed with Cengage and granted its motion to dismiss. We disagree, and find that the choice of law clause does not bar this lawsuit. Our reasoning follows.

## I.

Because we are reviewing the dismissal of a complaint, we take all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. City of Mia. Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp., 46 F.4th 22, 30 (1st Cir. 2022). Fred Kleiner is a professor emeritus at Boston University who has written several academic textbooks. In 2005, Kleiner entered into a publishing agreement with Wadsworth Publishing Company ("Wadsworth"), Cengage's predecessor in interest. Under the agreement, Kleiner agreed to author and deliver certain academic works. Wadsworth, in turn, agreed to publish and market the works, and to pay Kleiner royalties as specified in the agreement. The agreement contains two "escalator levels," which increase Kleiner's royalty percentage once a

certain number of aggregate units are sold. The agreement also imposes a reporting obligation: The publisher must "report on the sale of the Work in March and September of each year, for the six-month period ending the prior December 31 and June 30, respectively." Finally, the agreement contains a choice of law provision, which states that "[t]his Agreement shall be construed and governed according to the laws of the State of New York."

Cengage is a publisher and distributor of textbooks and other academic material. It acquired Wadsworth and, with it, a relationship with Kleiner. Cengage and Kleiner thereafter twice amended the agreement without changing the choice of law clause.

After entering and emerging from bankruptcy around 2013-2014, Cengage shifted its focus from a traditional textbook sales model to a subscription model. In the new model, called Cengage Unlimited, students can pay a single-price subscription fee per semester for Cengage's entire catalog, rather than purchasing books individually. To fit this new business model, Cengage designed a new method of calculating royalties owed to authors, as it no longer simply sold discrete units of an author's work. Under the new method, Cengage allocates the subscription fees users pay into several different "revenue pools" based on the type of material included in the subscription (e-books, courseware supplements, or print rentals) and assigns authors' works into one of the revenue pools. Authors are then paid royalties from the

- 4 -

revenue pool based on several variables, including (1) the author's contractual royalty rate, (2) the number of "uses" of the work, and (3) the net price as a percentage of total revenue for each title and product type.

Kleiner claims that Cengage exploited opportunities for obfuscation and deception that resulted from this new, more complex method of calculating royalties. Kleiner alleges that Cengage provided authors with incorrect and otherwise confusing reports, and then refused to provide straightforward responses to author inquiries that would have revealed that Cengage was not paying the full amount of royalties due to the authors. In a proposed amended complaint submitted along with his opposition to Cengage's motion to dismiss, Kleiner further alleges that Cengage sought to leverage authors' confusion by negotiating new agreements with terms more favorable to Cengage.

Kleiner's putative class action complaint against Cengage on behalf of himself and other authors alleges a single count for violation of Massachusetts General Laws Chapter 93A, which prohibits unfair or deceptive acts or practices in trade or commerce. M.G.L. c. 93A §§ 2, 11. He seeks declaratory and injunctive relief requiring Cengage to disclose its royalty calculation methods and provide reasonable disclosures of royalty-related information. He also seeks treble damages and attorneys' fees.

Cengage moved to dismiss the complaint on the grounds that the choice of law clause in Kleiner's publishing agreement bars the assertion of a claim arising only under Massachusetts law. Cengage also argued that even if Massachusetts law applies, the complaint fails to state a claim under Chapter 93A.

The district court granted Cengage's motion, reading the choice of law clause as "mandating that all disputes be resolved according to New York law." The court held the clause enforceable and characterized Kleiner's claim as "'essentially duplicative' of a contract claim"; therefore, the court reasoned, it was barred by the choice of law clause. The district court did not address whether the complaint failed to state a claim under Chapter 93A.

Kleiner appealed. He argues that the agreement's selection of New York law is unenforceable, and that even if it is enforceable, its selection of New York law to construe and govern the agreement does not bar Kleiner's statutory claim under Massachusetts' Chapter 93A. As we will explain, we agree with Kleiner that the choice of law clause does not bar the assertion of Kleiner's claim. And because neither party points to any other respect in which New York and Massachusetts law differ as they might bear on this dispute, we decline to decide whether the choice of New York law is unenforceable.

## II.

We review the district court's dismissal of a complaint de novo. City of Mia. Fire Fighters' & Police Officers' Ret. Tr., 46 F.4th at 30; see also Robidoux v. Muholland, 642 F.3d 20, 22 (1st Cir. 2011) (applying de novo review to choice of law determinations).

We begin with the language of the choice of law clause itself. In determining the scope of that clause, we will assume without deciding that the parties are correct that we should apply the choice of law principles of the forum state -- here, Massachusetts. See, e.g., Patton v. Johnson, 915 F.3d 827, 837 (1st Cir. 2019).

The clause reads, in pertinent part: "This Agreement shall be construed and governed according to the laws of the State of New York." Kleiner argues that this clause is too narrow to govern his claim because it directs only that the "Agreement . . . be construed and governed" in accordance with the laws of New York. His claim, he says, is not about how the agreement should be construed or governed; rather, his complaint asserts that Cengage's reporting practices are unfair and deceptive, which does not implicate any dispute concerning the construction of the agreement.

Cengage counters by pointing to Northeast Data Systems v. McDonnell Douglas Computer Systems Co., 986 F.2d 607 (1st Cir.

1993), in which we held that a contractual choice of law clause precluded the assertion of Massachusetts Chapter 93A claims for "willfully," "knowingly," or with "bad motive" breaching a contract, where breach was an essential element of the 93A claims. Id. at 609-10.  But the choice of law clause in Northeast Data Systems cut a much wider swath than does the clause before us in this case.  That clause stated:  "This Agreement and the rights and obligations of the parties hereto shall be governed by and construed in accordance with the laws of California."  Id. at 609 (emphasis added).  The much narrower choice of law clause here, by contrast, is for present purposes the same as the clause considered by the Massachusetts Supreme Judicial Court ("SJC") in Jacobson v. Mailboxes Etc. U.S.A., Inc., 646 N.E.2d 741 (Mass. 1995), which stated that the agreement was "to be construed under and governed by the laws of the State of California."  Id. at 743. Distinguishing Northeast Data Systems, the SJC found in Jacobson that this narrower clause did not preclude or govern Chapter 93A claims.  Id. at 746 n.9.  The SJC reasoned that because "[t]he agreement does not state that the rights of the parties are to be governed by California law but only that the agreement is to be governed and construed by California law[,] [t]he choice of law

clause does not purport to bar the application of G.L. c. 93A to the parties' dealings in Massachusetts."  Id.[1]

Subsequently, in Vertex Surgical, Inc. v. Paradigm Biodevices, Inc., 390 F. App'x 1 (1st Cir. 2010) (Souter, J.), we found that a choice of law clause stating that "Massachusetts law exclusively shall govern all terms of this Agreement" did not bar a claim brought under a Georgia statute, because "the narrow choice of law provision" did not state that the "rights of the parties are to be governed by [Massachusetts] law."  Id. at 3 & n.3 (alteration in original) (quoting Jacobson, 646 N.E.2d at 746 n.9). Similarly, in Valley Juice Ltd. v. Evian Waters of France, Inc., 87 F.3d 604, 612 (2d Cir. 1996) (citing Jacobson, 646 N.E.2d at 746 n.9), the Second Circuit reversed a district court's dismissal of a Massachusetts Chapter 93A claim where the choice of law clause stated that the "Agreement is to be governed by the laws of the State of New York."  The Second Circuit concluded that "Massachusetts would not interpret the choice of law clause in the Agreement to bar Valley's [Chapter 93A] claim by requiring that it proceed under New York law."  Id. at 612; see also L'Oreal USA,

_____

[1] Jacobson also applied California law to examine a forum selection clause that encompassed "all actions enforcing this agreement," and much of the opinion was devoted to determining the scope of that clause.  646 N.E.2d at 743.  Because the SJC was analyzing different language in that provision (and applying California law to that language), we examine only its comments on the separate choice of law clause.  Id. at 746 n.9.

Inc. v. RG Shakour, Inc., No. 08-cv-40064, 2010 WL 3504140, at *5 (D. Mass. Sept. 3, 2010) (finding that Chapter 93A claim survived notwithstanding choice of law clause stating, "this Agreement shall be construed in accordance with and all disputes herein shall be governed by" New York law).[2]

The clause at issue in this case states only that "[t]his Agreement shall be construed and governed" according to New York law. It does not otherwise select any state's law as governing the parties' rights and obligations that are created by statute. Nor does it "mandat[e]," as the district court mistakenly asserted, "that all disputes be resolved according to New York law." Therefore, the agreement does not suggest that the parties agreed that New York law would govern the adjudication of a claim that Cengage breached a statutory duty imposed by Massachusetts law. This conclusion is supported by Jacobson's determination that a choice of law clause stating an agreement was "to be construed

_____

[2] Cengage points to Northeast Data Systems' favorable citation of an earlier case from the Southern District of Florida, Scheck v. Burger King Corp., 756 F. Supp. 543, 546 n.1 (S.D. Fla. 1991), which found that a choice of law provision in a franchise agreement stating that "[t]his Agreement . . . shall be governed and construed under and in accordance with the laws of the State of Florida" barred certain Chapter 93A claims. But Scheck pre-dated Jacobson, and was in any event not a decision by a Massachusetts court.

under and governed by" one state's law does not extend to bar a statutory claim under another state's law. 646 N.E.2d at 746 n.9.

Cengage's argument that it is impossible to resolve Kleiner's claim without construing the contract does not undercut this conclusion. Consider for example a simple contract that contained a choice of law clause like the one in this case, and stated that A will pay B $1 per book sold by A. Imagine further that A sold 200 books but convinced B to accept $100 by preparing and sending to B in Massachusetts a doctored invoice falsely reporting only 100 books sold. In such a scenario, were there any dispute about construing the contract (e.g., can parol evidence be considered?), New York law would govern that question (assuming as we do here that the choice of law claim is enforceable). But that fact would provide no reason to preclude a fraud claim under Massachusetts law, nor would it require that New York law govern the fraud claim. See First Marblehead Corp. v. House, 473 F.3d 1, 8-9 (1st Cir. 2006) (applying Delaware law to contract and promissory estoppel claims pursuant to choice of law clause stating that plan's provisions "shall be governed by and interpreted in accordance with" Delaware law, but applying Massachusetts law to negligent misrepresentation claim). So too, here, if Cengage deceived an author in reporting what royalties were due under the contract as construed under New York law, nothing in the contract would dictate the choice of law to be applied in determining

whether that alleged deception was actionable not as a breach of contract, but as a violation of Chapter 93A.  See Dinan v. Alpha Networks, Inc., 764 F.3d 64, 68 (1st Cir. 2014) (holding that a choice of law clause "about the law to be applied in construing and enforcing the . . . agreement" did not apply to a quasi-contract duty that "arose outside of that agreement").  We therefore do not believe that Kleiner's Chapter 93A claim is precluded by the narrow choice of law clause before us.

Finally, we decline the parties' invitation to rule on whether Kleiner's complaint otherwise states a claim under Chapter 93A.  Although the parties point out that we could address this issue in our discretion, we are not obligated to do so.  See Singleton v. Wulff, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals . . . .").  We thus abide by the "general rule" that "a federal appellate court does not consider an issue not passed upon below."  Id. at 120; see also United States ex rel. Est. of Cunningham v. Millennium Lab'ys of Calif., Inc., 713 F.3d 662, 675-76 (1st Cir. 2013) (remanding for district court to consider whether the relator had stated a claim after vacating order dismissing complaint on jurisdictional grounds).

## III.

For the foregoing reasons, we <u>reverse</u> the judgment of the district court and <u>remand</u> for further proceedings consistent with this opinion.