[746 NYS2d 701]

TRANS-RESOURCES, INC., et al., Respondents, v NAUSCH HOGAN AND MURRAY, Defendant and Third-Party Plaintiff-Appellant. RFC INTERMEDIARIES, INC., Third-Party Defendant-Respondent.

First Department, August 29, 2002

APPEARANCES OF COUNSEL

*Rolf E. Gilbertson* and *Chad A. Snyder* of counsel (*Dale C. Christensen, Jr., Anne C. Patin, Richard Voelbel* and *Michelle K. Enright* on the brief; (*Seward & Kissel LLP* and *Zelle, Hofmann, Voelbel, Mason & Gette LLP*, attorneys), for respondents.

*Thorn Rosenthal* of counsel (*Thomas W. Hyland, Richard E. Lerner, Laura E. Evangelista* and *Amy McManus* on the brief; *Wilson, Elser, Moskowitz, Edelman & Dicker LLP* and *Cahill Gordon & Reindel*, attorneys), for defendant and third-party plaintiff-appellant.

*Sue C. Jacobs* of counsel (*Lester Chanin* on the brief; *Goodman & Jacobs, LLP*, attorneys), for third-party defendant-respondent.

## OPINION OF THE COURT

ELLERIN, J.

This action is brought by a reinsurance company in the name of the insureds (plaintiffs Trans-Resources, Inc. and Haifa Chemicals, Ltd., together, Trans-Resources) with which it settled a coverage dispute. Supreme Court held, as a matter of law, that defendant insurance broker, Nausch Hogan and Murray, was liable to Trans-Resources for the lack of coverage that resulted from the reinsurer's rejection of their claim. This appeal raises questions of the propriety of that decision and of two decisions that followed regarding discovery and damages.

Trans-Resources, the nominal plaintiffs, own and operate chemical manufacturing and storage facilities in Haifa, Israel. Their insurance is structured with a fronting company, i.e., an insurer that issued the policy on the risk and then reinsured 100% of that risk by placing portions of the coverage with various reinsurance carriers. One of the reinsurance carriers for the year July 1993 to July 1994 was the nonparty St. Paul Fire and Marine Insurance Company. Upon learning that the fronting company for the previous two years, Israel Phoenix Assurance Company, Ltd., would not renew its contract as of July 1, 1993, defendant broker Nausch began soliciting reinsurance on behalf of an unspecified fronting company that would take Israel Phoenix's place. Nausch provided third-party defendant RFC, St. Paul's subsidiary and designated intermediary for the reinsurance in this case, with a placement slip that described the risk to be insured and identified the fronting company, or reinsured, as "Israeli Company to be agreed." Then Eliahu Insurance Company was chosen as the new fronting company,

and Nausch submitted a binder to RFC covering St. Paul's share of the risk and identifying Eliahu as the reinsured. Notwithstanding, RFC returned a cover note acknowledging St. Paul's agreement to reinsure Israel Phoenix. Nausch failed to notice the error. After the chemical plant was destroyed in a fire in early 1994, all the reinsurers paid their shares of the loss except St. Paul, which maintained that it never reinsured Eliahu, the fronting company, and therefore was not liable to Trans-Resources, the insureds. The shortfall that resulted from St. Paul's denial of coverage, according to the parties' stipulation in this action, was $6,242,750.

Trans-Resources sued the fronting company, Eliahu, the reinsurer, St. Paul, St. Paul's designated intermediary RFC, and their Israeli broker in Israel. Eliahu brought a third-party action against the broker, Nausch. About a year later, Trans-Resources commenced this action in New York alleging, inter alia, that Nausch was negligent in failing to obtain documentation from St. Paul (through RFC) that correctly identified Eliahu as the reinsured and that it breached its contract to procure and place insurance for them. The Israeli action was subsequently settled and withdrawn with prejudice to all parties. According to the terms of the settlement, St. Paul paid $6.1 million to the insureds, plaintiffs Trans-Resources, in return for an assignment of their claims against defendant broker Nausch in the New York action. The insureds' Israeli broker also paid them $50,000 in settlement. In a third-party action against RFC in New York, defendant broker Nausch alleged, inter alia, that RFC was negligent in failing to obtain documentation from St. Paul that correctly identified Eliahu as the reinsured and that it breached a duty to Nausch to exercise reasonable care in procuring the reinsurance. St. Paul moved for summary judgment against Nausch, Nausch cross-moved for summary judgment against Trans-Resources and for summary judgment against RFC, and RFC cross-moved for summary judgment against Nausch.

The court granted summary judgment to St. Paul, dismissed Nausch's cause of action against RFC on the ground that the two were involved in an arm's length transaction and RFC owed no duty of care to Nausch, and, in the exercise of discretion, denied as unnecessary a motion to amend the caption to reflect St. Paul, the assignee, as the real party in interest.

Defendant contends that summary judgment should have been granted to it and the complaint dismissed on the ground that the assignment to St. Paul of plaintiffs' rights is contrary

to public policy and New York law (*see, North Star Reins. Corp. v Continental Ins. Co.*, 82 NY2d 281, 296 [an insurer may not "fashion the litigation so as to minimize its liability" under a policy]; *Jones Lang Wootton USA v LeBoeuf, Lamb, Greene & MacRae*, 243 AD2d 168, *lv dismissed* 92 NY2d 962 [an insurer may not structure a settlement with its insured regarding coverage so as to pursue a malpractice action against a professional retained by the insured]). Defendant argues that, instead of litigating whether there is coverage under the policy, St. Paul and plaintiffs structured a settlement purportedly to allow St. Paul, through plaintiffs, to pursue a claim that defendant negligently placed the insurance that St. Paul ultimately agreed to pay. This is a mischaracterization of St. Paul's position.

For the sake of clarity, it bears repeating that St. Paul is plaintiffs' assignee. Contrary to defendant's assertion, St. Paul did not ultimately abandon its refusal to satisfy plaintiffs' claim for coverage under the policy. Far from being a tacit admission of liability, the payment it made to plaintiffs was consideration for the assignment of plaintiffs' claims against defendant. An assignee takes a cause of action subject to all the infirmities, equities and defenses that could have been asserted against the assignor at the time of the assignment (*see*, 6A NY Jur 2d, Assignments § 66). Moreover, the assignee of a claim in litigation necessarily assumes the risk of the litigation (*Foster v Central Natl. Bank of Boston*, 183 NY 379, 386). The assignment only gives St. Paul the right to bring this action against defendant. It does not purport to insulate St. Paul from any defense that may be asserted against it and therefore does not represent the "evil" that *North Star* and *Jones Lang Wootton*, even read broadly, held to be against public policy.

However, defendant's concern that St. Paul is attempting to evade a determination of its liability on the reinsurance policy is justified. Whether it is defending itself in an action brought by plaintiffs Trans-Resources, the insureds, or prosecuting an action against defendant Nausch, the broker, St. Paul must prove that the error in the identity of the reinsured, or fronting company, absolved it of its obligations under the reinsurance contract, i.e., that it had no liability on the policy because of Nausch's failure to detect the error. Obviously, if St. Paul was obligated to provide coverage, then there can be no claim against defendant for failing to properly place the insurance. But, although St. Paul's brief is, in defendant's description, "veiled in the false presumption that St. Paul successfully

fended off [plaintiffs'] claim for coverage," there has in fact been no determination of St. Paul's liability on the policy. There was no such determination in the Israeli action, which culminated in settlement. There was none in the federal action brought by St. Paul for a declaratory judgment that it had no contract with Eliahu and therefore no liability to plaintiffs. That action was dismissed for lack of personal jurisdiction (*St. Paul Fire & Mar. Ins. Co. v Eliahu Ins. Co., Ltd.*, 1997 WL 357989, 1997 US Dist LEXIS 8916 [SD NY, June 26, 1997], *affd* 152 F3d 920). And there has been none thus far in this action. The basis of Supreme Court's grant of summary judgment to St. Paul was its conclusion that defendant's failure to inform RFC of the error in the identity of the reinsured constituted, as a matter of law, negligence in procuring the insurance. The decision does not indicate that the court considered defendant's argument that the identity of the reinsured, i.e., the fronting company, was immaterial to St. Paul's decision to underwrite the underlying risk, which was plaintiffs' chemical plant, and that the error is therefore not a defense to coverage.

Defendant asserts first that St. Paul agreed to provide reinsurance even before the identity of the reinsured was known, i.e., that it committed itself, through RFC, to reinsuring an "Israeli Company to be agreed," as the placement slip reflects. St. Paul, however, asserts that it was never asked to reinsure an "Israeli Company to be agreed." In an affidavit in opposition to defendant's cross motion for summary judgment against RFC, Michael E. Lambert, on behalf of RFC, says that, based on an earlier placement slip, RFC believed that the reinsured was Israel Phoenix Assurance Company, Ltd. He says that the later placement slip identifying the reinsured as an "Israeli Company to be agreed" arrived at RFC unaccompanied by a cover letter pointing out a change in the reinsured, which by industry standards did not constitute advice of the change.

Most significant, however, are Mr. Lambert's further statements that the identity of the reinsured "was not important because, as I understood, almost all Israeli facultative reinsurance placements were 100% fronted with the reinsured or 'fronting company' playing a strictly ministerial role. The reinsured or fronting company did not take any liability upon itself." Indeed, he concludes, "we believe now, and always have believed, that the identity of the reinsured is not in any way material to the risk undertaken by St. Paul, that fronting companies in Israeli facultative reinsurance are essentially interchangeable, and that St. Paul should be required to pay its full share of [plaintiffs'] claim * * *."

Defendant next points out that at the time St. Paul denied coverage, RFC conceded that the error was not material. RFC's corporate counsel, Andrew Terrell, acknowledged in a letter to St. Paul that defendant broker had informed RFC that the fronting company would be Eliahu Insurance Company, but that "[as] a result of a clerical error this information was not passed to St. Paul Re." Terrell's letter concludes, "[W]e are asking for St. Paul Re's position on the following: do you consider the error in the name of the reinsured to be material to your risk and if so, why? Since St. Paul's liability is the same in all respects." However, St. Paul points out that, in an affidavit in opposition to defendant's cross motion for summary judgment and in support of RFC's cross motion, Terrell states that his letter was based on defendant's representations to him that defendant had fully and timely informed RFC of the identity of the reinsured—representations that he subsequently learned were erroneous. But Terrell also says that his letter "was intended to convince St. Paul that the failure to correctly identify the reinsured was not a material mistake (which I continue to believe), because, like direct insurance, St. Paul undertook the risk based entirely on the liability posed by the Haifa plant itself, and without regard to which Israeli insurer would act as a fronting company, which is merely a clerical position with no actual exposure."

Defendant asserts finally that the reinsurance policy contains a cut-through provision, which permits plaintiffs to claim directly against St. Paul, bypassing the reinsured, and a claims control clause, which gives St. Paul and the other reinsurers direct management of claims, again without involving the reinsured. St. Paul, alternatively, points to its reinsurance certificate, which does not contain these terms and which, moreover, disavows any direct responsibility to plaintiffs. The "General Conditions" of the certificate provide that "the obligations under this Reinsurance Agreement shall run to the Company [the reinsured] and the Reinsurer shall have no obligation to the original insured or anyone claiming under the policy(ies) reinsured." However, the amended pleading by St. Paul's assignor, the insureds, Trans-Resources, in the Israeli action states that, "[a]s is the custom in this branch of insurance, a cover note is issued at the start, while the reinsurance policy setting out all the conditions of the insurance is issued at a later stage, and because of the large number of insurers who were participating, it was stated in the cover note that the full policy would be worked out by the leading underwriter." St.

Paul's cover note reflects this custom. Under "Conditions," it lists "Wording to be agreed L/U only," i.e., leading underwriter (not St. Paul), and "Claims Control Clause." Moreover, according to the amended pleading, the terms of the insurance contract included "in regard to the direct liability of the reinsurer vis-à-vis the insured—a clause known as a Cut Through Clause—and it, in the same way as the remaining conditions of the insurance, applies to St. Paul and is binding on it." This cut-through clause reflected the agreement of the reinsurers "to pay directly to the named insured * * * with respect to any claim under said policy." It "stipulates direct liability and creates a direct procedural privity as between the original insured and the reinsurer."

Defendant has thus, at the least, raised an issue of fact as to whether the identity of the reinsured, or fronting company, was material to St. Paul's decision to underwrite the risk, which will determine whether the error in the reinsured's identity relieved St. Paul of its obligation under the policy. Accordingly, defendant broker's failure to notice the error should not have been deemed negligence as a matter of law in procuring the insurance. However, in the absence of special circumstances that might give rise to a fiduciary relationship between them, RFC was properly held to have no duty to defendant for its part in the perpetuation of the error (*see, e.g., Mobil Oil Corp. v Joshi*, 202 AD2d 318).

In view of our reversal of the court's grant of summary judgment to St. Paul on the ground that there is a factual issue as to the materiality of the reinsured's identity, the court's denial of defendant's motion to compel discovery must be reversed, to the extent that outstanding discovery is necessary for resolution of that issue. We note that there is nothing in the record that would constitute a waiver by defendant of its discovery rights (*see, e.g., Pinter-Zwicker Elec. Co. v Alliance Elec.*, 175 AD2d 737). Indeed, shortly before granting the motion for summary judgment in February 2000, the court had "so ordered" a stipulated discovery schedule that, inter alia, set a discovery completion date of April 10, 2000.

Having held that defendant's negligence in placing the insurance with St. Paul rendered it liable for the shortfall in coverage in the amount of the St. Paul policy, the court held that St. Paul, as plaintiffs' assignee, was entitled to recover from defendant the entire amount of that policy, less the $50,000 that represented payment to plaintiffs by the Israeli broker (although ultimately the court awarded only the $6.1

million that St. Paul sought). Defendant argues that, since an assignee cannot recover more than the assignor would be entitled to obtain and plaintiffs have recovered almost their entire claim under the policy, St. Paul is entitled to recover only the balance of the policy (less the $50,000 paid in settlement by the Israeli broker). This argument again confuses consideration for the assignment with recovery of the claim under the policy. Contrary to defendant's assertion, plaintiffs have not recovered almost their entire claim. As discussed above, they received a sum of money in exchange for assigning their entire claim to St. Paul. As assignee, St. Paul acquired "all the right, title and interest theretofore possessed by the assignor" and there is no basis for reducing its recovery by the amount of the consideration it paid for the assignment (*Aetna Cas. & Sur. Co. v McCullough*, 41 AD2d 161, 162). The court properly determined the measure of damages in the event that St. Paul prevails on the issue of liability.

We note, however, that the court cited the inapposite *Federal Ins. Co. v Arthur Andersen & Co.* (75 NY2d 366), a decision involving an insurer's right of equitable subrogation, in support of its determination. There is no subrogation issue in this case. The principle upon which an insurer accrues rights as a subrogee is "that in equity an insurer, which has been compelled under its policy to pay a loss, ought in fairness to be reimbursed by the party which caused the loss" (*id.* at 372). Here, again, St. Paul did not pay the loss under plaintiffs' policy. Nor, in any event, is defendant responsible for the loss. It was a fire that destroyed the chemical plant.

Accordingly, the judgment, Supreme Court, New York County (Louis York, J.), entered April 11, 2001, bringing up for review, inter alia, an order, same court and Justice, entered March 3, 2000, which, inter alia, granted plaintiffs' motion for summary judgment, denied defendant's cross motion for summary judgment dismissing the complaint and granted third-party defendant's cross motion for summary judgment dismissing the third-party complaint, and an order, same court and Justice, entered September 6, 2000, which denied defendant's motion to compel discovery, and awarding nonparty assignee St. Paul Fire and Marine Insurance Company $7,552,213.51, should be reversed, on the law, with costs to defendant Nausch payable by plaintiffs, the judgment vacated, plaintiffs' motion for summary judgment denied and defendant's motion to compel discovery granted.

SAXE, J.P., BUCKLEY, SULLIVAN and ROSENBERGER, JJ., concur.

Judgment, Supreme Court, New York County, entered April 11, 2001, reversed, on the law, with costs to defendant Nausch payable by plaintiffs, the judgment vacated, plaintiffs' motion for summary judgment denied and defendant's motion to compel discovery granted.