SUPERIOR COURT 
 
 CLEAR BLUE SPECIALTY INSURANCE COMPANY v. R-SVP II, L.L.C.; BP SIDECAR INVESTMENT III, LLC; BPI CREDIT 3, LLC; BPI CREDIT 4, LLC; AND BPI CREDIT 5, LLC

 
 Docket:
 2484CV01898-BLS2
 
 
 Dates:
 May 15, 2025
 
 
 Present:
 Kenneth W. Salinger Justice of the Superior Court
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER DENYING CLEAR BLUE’S MOTION TO DISMISS THE AMENDED COUNTERCLAIMS
 
 

 This action concerns the scope of Clear Blue Specialty Insurance Company’s obligations under a complex, multi-level reinsurance structure. Clear Blue is seeking a declaration that it owes nothing under its reinsurance certificates. The BPI Insureds (R-SPV II, L.L.C., BPI Credit 3, LLC, and BPI Credit 4, LLC) assert amended counterclaims for breach of contract damages, seeking their own declaratory relief, and claiming that Clear Blue violated G.L. c. 93A.
The Court will deny Clear Blue’s motion to dismiss because the BPI Insureds have standing, no necessary parties are missing from the case, and the factual allegations in the amended counterclaims plausibly suggest that Clear Blue breached its obligations under two reinsurance certificates, engaged in unfair insurance settlement practices in violation of c. 93A, and could face additional liability under a third reinsurance certificate.[1]
As alleged in their counterclaims, the BPI Insureds make secured loans to early- stage companies, with the borrowers’ intellectual property serving as collateral. The BPI Insureds bought collateral protection insurance (“CPI”) against the risk that a borrower may default and their collateral could end up being sold for less than the amount owed.
This insured risk was reallocated through several layers of reinsurance as follows. The BPI Insureds bought their primary CPI Policies from uncapitalized Bermuda-domiciled segregated account companies (“SACs”) affiliated with White Rock (SAC) Insurance Ltd. They did so with the understanding that the relevant accounts or “cells” within these special purpose entities would pass
 
--------------------------------------------
 
[1] To survive a motion to dismiss under Mass. R. Civ. P. 12(b)(6), a complaint or counterclaim must make factual allegations that, if true, would “plausibly suggest … an entitlement to relief.” Lopez v. Commonwealth, 463 Mass. 696, 701 (2012), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).
 
                                                            -1-
 
the risk on to a reinsurer. As planned, these White Rock Cells bought reinsurance for the full amount of their risk from Clear Blue, a Texas-based commercial reinsurer with substantial assets. Clear Blue chose to obtain its own further reinsurance (known in the insurance industry as “retrocession” coverage) from a different White Rock SAC account called cell T94 (known as a “retrocessionaire”).[2] Clear Blue understood that this retrocessionaire had no assets of its own and would cover the retrocession risk by obtaining stand-by letters of credit (“LOCs”). Clear Blue arranged for Vesttoo to supply the LOCs because the two companies had a close, longstanding, and ongoing trading relationship. Vesttoo produced what it said were LOCs issued by China Construction Bank (“CCB”).
Clear Blue came to regret its reliance on and business relationship with Vesttoo. The BPI Insureds allege that Clear Blue should have but failed to audit these LOC to confirm that they were authentic and collectible, Vesttoo turned out to be engaged in a vast fraud, and the LOCs that Vesttoo produced were forgeries. CCB repudiated the LOCs in July 2023, asserting that they are fraudulent and unenforceable. Vesttoo filed a petition for Chapter 11 bankruptcy protection weeks later.
The BPI Insureds claim that Clear Blue is now liable under its Reinsurance Certificates to pay more than $125 million in realized losses from loan defaults by Coherent Logix, Inc., and Imperium 3 New York, Inc. (“iM3NY”). They also seek a declaration that Clear Blue would also be liable if Hyper Ice, Inc., were to default on its loan and as a result BPI Credit 4 were to suffer a loss covered under its CPI policy.[3]
 
--------------------------------------------
 
[2] “In its simplest terms, a retrocession is reinsurance of reinsurance. In a retrocessional transaction, one reinsurer cedes an assumed reinsurance exposure, rather than direct insurance policies, to still another reinsurer. In this situation, the reinsurer that is ceding risk is known as the ‘retrocedent.’ The reinsurer that assumes retrocessional risk is known as the ‘retrocessionaire.’ “ B. Friedman, 4C N.Y. Practice, Com. Litig. in New York State Courts § 91:3 (5th ed.); accord Global Reins. Corp. U.S. Branch v. Equitas Ltd., 969 N.E.2d 187, 189 (N.Y. 2012).
[3]  A footnote in the amended counterclaims says that BPI Credit 4 has assigned  its rights under its CPI policy and the associated Clear Blue reinsurance certificate to R-SPV IV, L.L.C., but that it nonetheless asserts counterclaims in its own name because Clear Blue named BPI Credit 4 as a defendant in the complaint in this action.
 
                                                            -2-
 
Clear Blue denies that it faces any liability, asserting that it is protected by a “pay-as-paid” provision in the primary CPI Policies that was allegedly incorporated into its Reinsurance Certificates. Clear Blue contends since it was never paid and never will be paid by its retrocessionaire from LOC proceeds it does not have to pay anything to the BPI Insureds.
The Court is not persuaded by Clear Blue’s arguments in support of its motion to dismiss the counterclaims. It concludes that the BPI Insureds may sue Clear Blue directly under the “cut-through” provision of its Reinsurance Certificates and that no indispensable parties are missing. Clear Blue’s assertion that the “pay-as-paid” provisions in the primary CPI Policies were incorporated into the Reinsurance certificates and therefore relieve Clear Blue of its reinsurance obligations is without merit; by their terms those provisions protected only the primary insurers, and the “follow form” provision in the Reinsurance Certificates did not rewrite them to protect Clear Blue as well. Finally, the BPI Insureds have asserted viable claims for declaratory judgment as to Clear Blue’s contractual obligations under the Hyper Ice reinsurance certificate, alleging that Clear Blue breached its implied covenant of good faith and fair dealing, and asserting that Clear Blue also violated G.L. c. 93A.
1. Threshold Issues. Let’s beginning with the question of which States’ law governs the Reinsurance Certificates and Clear Blue’s arguments that the counterclaims must be dismissed for lack of standing and failure to join indispensable parties.
1.1. Choice of Law. The Court must apply New York law in construing the CPI Policies and the Reinsurance Certificates. The underlying CPI Policies issued by the primary White Rock Cels provide that they “shall be governed by and construed in accordance with” New York law. The Reinsurance Certificates issued by Clear Blue include a “follow form” provision, stating that these certificates “shall be subject to the terms and conditions of the policy(ies) reinsured.” As a result, the choice of law provision in the primary policies also governs the reinsurance certificates. See Home Ins. Co. of Illinois (New Hampshire) v. Spectrum Info. Tech., Inc., 930 F.Supp. 825, 835 n.9 (E.D.N.Y. 1996).
1.2. Standing under Cut-Through Provisions. The Reinsurance Certificates include a “cut-through” provision which says that if the primary insurer “shall at any time become insolvent or otherwise does not meet or is prevented from meeting its obligations under the original policy,” and Clear Blue receives written notice of the primary insurer’s “insolvency or failure to meet its
 
                                                            -3-
 
obligations,” then Clear Blue must pay any amount that it owes under the reinsurance certificate directly to the relevant BPI Insured.
This provision creates contractual privity between the BPI Insureds and Clear Blue, and gives each BPI Insured “a direct right of action against” Clear Blue, if its conditions are meet. See Jurupa Valley Spectrum, LLC v. National Indem. Co., 555 F.3d 87, 89 (2d Cir. 2009) (discussing New York law); accord Trans-Res., Inc. v. Nausch Hogan & Murray, 298 A.D.2d 27, 33, 746 N.Y.S.2d 701, 706 (N.Y. App. Div. 2002).
The amended counterclaims allege that the BPI Insureds gave Clear Blue written notice that: the primary White Rock Cells were in insolvency proceedings; these Cells had but failed to meet insurance obligations under the original policies; and the primary White Rock Cells were prevented from meeting their obligations under the original policies because Clear Blue refused to pay them under the reinsurance certificate. The Court must assume that these allegations are true for the purpose of deciding Clear Blue’s motion to dismiss. See, e.g., Rafferty v. Merck & Co., Inc., 479 Mass. 141, 147 (2018).
Assuming that these allegations are true, nothing more is required to show that the BPI Insureds have met the conditions of the cut-through provision and therefore have standing to sue Clear Blue directly.
Clear Blue contends that the BPI Insureds nonetheless cannot assert claims against it because the Reinsurance Certificates include another section stating that no one other than the reinsured (i.e., the primary White Rock Cells) shall “have any rights” under those certificates. This argument is unavailing.
The “rights” provision invoked by Clear Blue cannot be read in isolation, but instead must be construed with the rest of the contract as a whole. See Global Reinsurance Corp. of America, v. Century Indemnity Co., 91 N.E.3d 1186, 1193 (N.Y. 2017); see generally Cortlandt St. Recovery Corp. v. Bonderman, 96 N.E.3d 191, 198 (N.Y. 2018) (“It is well established that when reviewing a contract, particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties manifested thereby.”) (quoting Kolbe v. Tibbetts, 3 N.E.3d 1151, 1156 [2013]); City of New York v. Philadelphia Indem. Ins. Co., 54 A.D.3d 709, 710, 864 N.Y.S.2d 454, 456 (N.Y. App. Div. 2008) (insurance policy “should be read as a whole”). Therefore, the Court cannot ignore the cut-through provision when construing the “rights” section, but instead must interpret both of these provisions together as part of a whole contract.
 
                                                            -4-
 
Though Clear Blue used a policy form with a “rights” section stating in substance that there were no intended third-party beneficiaries with any rights under the contract, it added a “cut-through” provision that nonetheless gave each BPI Insured specific and enforceable rights. The more specific cut-through provision controls here and trumps the broad and general “rights” section. Under New York law, the way to resolve “irreconcilable differences between contract clauses is to enforce the clause relatively more important or principal to the contract,” subject to “the corollary that the more specific clause controls the more general.” Israel v. Chabra, 906 N.E.2d 374, 380 n.3 (N.Y. 2009), quoting 11 Lord, Williston on Contracts § 32:15, at 507–510 (4th ed.).
Even if one considered the conflict between the “rights” section and the cut- through provision as creating an ambiguity, the result would be the same because “any ambiguity” in an insurance contract “must be construed in favor of the insured and against the insurer.” Consolidated Restaurant Operations, Inc. v.  Westport  Ins.  Corp.,  235  N.E.3d  332,  336  (N.Y.   2024),  quoting   White  v. Continental Cas. Co., 878 N.E.2d 1019 (N.Y. 2007).
1.3. Failure to Join Necessary Parties. Clear Blue’s assertion that the counterclaims must be dismissed because the BPI Insureds failed to join other indispensable parties is also without merit.
First, Clear Blue contends that the BPI Insureds “have no contractual privity with Clear Blue,” are seeking to enforce the primary White Rock Cells’ rights under the reinsurance certificates, and therefore had to name the White Rock Cells as parties. This argument sounds like an assertion that the White Rock Cells are necessary as plaintiffs, but in the next sentence Clear Blue asserts without explanation that they are indispensable counterclaim defendants.
This argument is wrong for the reasons discussed above. If the conditions of cut-through provisions are met, then the BPI Insureds have their own contractual rights that they may assert directly against Clear Blue. The White Rock Cells are not necessary parties.
Second, Clear Blue asserts that the BPI Insureds should have sued White Rock’s parent Aon plc, apparently on the theory that Aon promoted the CPI insurance program Aon, it therefore had a duty to ensure that the letters of credit submitted by Vesttoo were genuine and enforceable, and it breached that duty. In other words, Clear Blue believes that BPI Insured should have sued Aon for negligence and left Clear Blue alone.
 
                                                            -5-
 
Even assuming that the BPI Insureds have a viable tort claim against Aon for negligence, they are not required to assert that claim before or at the same time that they are pressing their claims against Clear Blue for breach of contract and under c.93A. If two parties are allegedly jointly liable in tort, the injured plaintiff is not required to sue both of them, but instead may choose to bring an action against only one. See Donnelly v. Larkin, 327 Mass. 287, 295–296 (1951). It follows that if in this case Clear Blue has allegedly breached its contractual obligations (and violated c. 93A) while Aon is arguably liable in tort, the BPI Insureds are free to sue Clear Blue without joining Aon as a defendant on related tort claims.
Clear Blue does not contend and has not shown that Aon’s rights will be determined or affected by resolution of the pending claims against Clear Blue. Since relief may be granted as between the parties that are before the court, without “affect[ing] the rights of those who are not,” any missing parties “are not indispensable parties.” Franks v. Markson, 337 Mass. 278, 284 (1958); accord Kitras v. Town of Aquinnah, 64 Mass. App. Ct. 285, 291-296, rev. denied, 445 Mass. 1109 (2005) (Federal agency with legal interest in subject matter of State civil action not an indispensable party where relief may be granted against existing defendant without infringing legal rights of Federal agency).
2. Scope of the Pay-as-Paid Provisions. Now let’s turn to Clear Blue’s primary argument, which is that it has no contractual obligation under its reinsurance certificates to pay anything unless and until Clear Blue receives payment under the letters of credit promised by its retrocessionaire. This argument is incorrect.
Clear Blue seeks to invoke the pay-as-paid clause in the CPI Policies that were issued by the primary White Rock Cells. Clear Blue contends that this term was incorporated into its reinsurance certificates through the “follow form” provision.
The pay-as-paid clause in each of the CPI Policies protects the primary White Rock Cell that is providing the insurance, and does not protect any reinsurer. Each of these clauses states as follows:
It is hereby understood and agreed that the Insurer will reinsure all liabilities and obligations arising under this Policy in respect of the Segregated Account under a reinsurance contract (the “Reinsurance”) and that any payments due by the Insurer to the Insured Lender(s) under this Policy shall be payable only after the Insurer has received payment of the respective amount under the Reinsurance.
 
                                                            -6-
 
The CPI Policies each define the “Insurer” as the particular SAC segregated account or cell that is contracting to provide the insurance coverage. And the pay-as-paid provision makes clear that it protects only the Insurer, and not the provider of the Reinsurance, by distinguishing between them. It states that the Insurer is not required to pay amount amounts due under the policy until after it has received that amount from the reinsurer.
As noted above, the Reinsurance Certificates include a “follow form” provision which states that Clear Blue’s liability under these certificates “shall be subject to the terms and conditions of the policy(ies) reinsured.” Although the follow form provision may technically incorporate the pay-as-paid clauses from the primary policies, it does not have the effect of rewriting those clauses to provide Clear Blue with its own pay-as-paid protection.
“Follow form policies allow an insured that deals with multiple ‘insurers for the same risk to obtain uniform coverage, and to know, without a minute policy-by-policy analysis, the nature and extent of that coverage.’ ” Jin Ming Chen v. Ins. Co. of the State of Pennsylvania, 163 N.E.3d 447, 452 (N.Y. 2020), quoting Union Carbide Corp. v. Affiliated FM Ins. Co., 947 N.E.2d 111, 114 (N.Y. 2011). “In other words, if the underlying policy covers certain conduct, the excess policy does as well.” Id.
“However, a general ‘follow form’ provision does not override the express payment terms set forth in the excess [or reinsurance] policy that define the limits of excess [or reinsurance] coverage.” Chen, 163 N.E.3d at 452. Similarly, it also does not alter or change the terms or conditions of the underlying policy when incorporating them into an excess or reinsurance policy.
Though the reinsurance certificates are governed by New York law, Clear Blue quotes the Massachusetts Supreme Judicial Court’s observation that “use of a follow form clause” makes an excess or reinsurance policy “a carbon copy of the primary policy.” See Allmerica Financial Corp. v. Certain Underwriters at Lloyd’s, London, 449 Mass. 621, 630 (2007). That observation does not support Clear Blue’s legal position.
The follow form provision may have copied the pay-as-paid clause verbatim into each reinsurance certificate. But the effect of doing so is merely to reiterate that the primary White Rock Cells do not have to pay out to any BPI Insured until after they receive payment from the reinsurer, Clear Blue. When one makes a carbon copy of the pay-as-paid clauses from the CPI Policies, the result
 
                                                            -7-
 
is not an entirely new provision that says Clear Blue does not have to honor its reinsurance obligations until after it receives payment from its retrocessionaire.
3. Challenges to Particular Counterclaims. Clear Blue’s remaining arguments, seeking dismissal of particular counterclaims, are also without merit.
3.1. Declaratory Judgment as to Hyper Ice. Count V is not an impermissible claim for breach of contract based on an inadequate allegation of anticipatory repudiation, as Clear Blue contends. Instead, this counterclaim is a simple request for a declaratory judgment as to the meaning and scope of Clear Blue’s obligations under the Hyper Ice reinsurance certificate. “The determination of contractual rights is a proper subject of a declaratory judgment proceeding.” Sahli v. Bull HN Info. Sys., Inc., 437 Mass. 696, 705 (2002).
The BPI Insureds make allegations about Clear Blue allegedly repudiating its obligations under this certificate merely to show why there is an actual controversy worthy of resolution, not because it is asserting a damages claim for anticipatory breach of contract.
Clear Blue’s assertion that the BPI Insureds may not seek a declaration as to each sides’ contractual rights under this certificate unless and until Clear Blue actually breaches its contractual obligations is wrong. A party to an actual controversy may seek declaratory relief under G.L. c. 231A without having to show that they have suffered actual injury or any other “actual impairment of rights.” See City of Boston v. Keene Corp., 406 Mass. 301, 304 (1989) To the contrary, a party may seek declaratory relief “either before or after a breach or violation” has occurred, “and whether any consequential judgment or relief” for actual damages “could be claimed … or not.” G.L. c. 231A, § 1.
The BPI Insureds are entitled to seek declaratory relief because the allegations in the counterclaims plausibly suggest that there is an actual controversy over the meaning of that contract, the BPI Insureds have standing to protect their conditional rights under the cut-through provision, all necessary parties have been joined, and the BPI Insureds’ interpretation of the Hyper Ice reinsurance certificate is correct. See Buffalo-Water 1, LLC, v. Fidelity Real Estate Co., LLC, 481 Mass. 13, 18–20 (2018) (requirements for declaratory judgement claim); Bortolotti v. Hayden, 449 Mass. 193, 206 (2007). Nothing more is required to state a viable claim for declaratory relief.
 
                                                            -8-
 
3.2. Breach of the Implied Covenant of Good Faith. Clear Blue’s challenges to the claim in Count VI for breach of the implied covenant of good faith and fair dealing are also without merit.
First, as discussed above in § 1.1 of this decision, the cut-through provision creates contractual privity between the BPI Insureds and Clear Blue. This means that if the conditions of that clause are met, as the BPI Insureds contend, then the BPI Insures may sue for breach of the express terms of the reinsurance certificates and also for breach of the implied covenant of good faith.
Second, the allegations that Clear Blue engaged in unfair insurance claims handling and settlement practices state a claim for violation of the implied covenant that is not duplicative of the separate claims that Clear Blue also breached its express contractual obligations. See Rockefeller Univ. v. Aetna Cas. & Sur. Co., 231 A.D.3d 457, 458, 217 N.Y.S.3d 562 (N.Y. App. Div. 2024). Not only is the alleged misconduct different, but the claimed consequential damages (which could include attorneys’ fees incurred to enforce the BPI Insureds’ under the Reinsurance Certificates) may differ as well. Id.
Third, the BPI Insureds are not claiming “that Clear Blue had an implied obligation to unconditionally accept and process their claims under the Reinsurance Certificates,” as Clear Blue argues. It may be that such an implied obligation would be inconsistent with express terms of the reinsurance certificates (even though they did not incorporate any pay-as-paid clause that applied to Clear Blue). But since the BPI Insureds are not making such a claim, this “straw man” argument provides no basis for dismissing this counterclaim.
3.3. Violation of G.L. c. 93A. Finally, Clear Blue has not shown that the claim alleging violations of G.L. c. 93A should be dismissed either.
First, the fact that Clear Blue’s reinsurance contracts are governed by New York law, through their incorporation of choice-of-law provisions in the underlying CPI Policies, does not mean Clear Blue may not be sued under c. 93A because it is a Massachusetts statute.
A contract provision like this, stating only that the agreement is to be governed by the law of some other State, does not bar application of G.L. c. 93A to the parties’ dealings, because such a provision does not mean that all of the parties’ rights are to be governed by the law of that State. See Stagecoach Transp., Inc. v. Shuttle, Inc., 50 Mass. App. Ct. 812, 818–819 (2001) (choice-of-law provision stating that contract is governed by New York law did not bar application of c.
 
                                                            -9-
 
93A to parties’ dealings); accord Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 580 n.9 (1995).
The Court recognizes that the incorporation of the choice-of-law provision making Clear Blue’s certificates subject to New York law bars any claim under c. 93A that is based solely on an underlying alleged breach of contract. See Worldwide Commodities, Inc. v. J. Amicone Co., 36 Mass. App. Ct. 304, 308 (1994) (adopting holding in Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 608–610 [1st Cir. 1993]).
But that rule is not implicated here. This c. 93A claim is based on allegations that Clear Blue engaged in unfair, bad faith insurance claims handling and settlement practices. This claim sounds more in tort than in contract. See Schwartz v. Travelers Indem. Co., 50 Mass. App. Ct. 672, 675 (2001) (insurance claims handling obligations imposed by G.L. c. 176D are “independent from the contract” of insurance). It is therefore not barred by the contractual choice of law provision. See, e.g., Stagecoach Transp., 50 Mass. App. Ct. at 818; Kleiner v. Cengage Learning Holdings II, Inc., 66 F.4th 28, 32–33 (1st Cir. 2023) (distinguishing Northeast Data Systems).
Second, whether alleged misconduct has sufficient connection to Massachusetts to implicate c. 93A, § 11, usually cannot be resolved on a motion to dismiss. See Resolute Mgmt., Inc. v. Transatlantic Reins. Co., 87 Mass. App. Ct. 296, 300–301 (2015) (reversing dismissal of claim under G.L. c. 93A, § 11).
The burden of proof will be on Clear Blue to prove that its allegedly unfair or deceptive conduct did not occur primarily and substantially in Massachusetts. See G.L. c. 93A, § 11; Kuwaiti Danish Computer, supra, at 470.
As a result, the BPI Insureds are not required as part of their counterclaims to plead facts sufficient to withstand a defense that that the center of gravity of his claim is not within Massachusetts. Resolute Mgmt., supra, at 301. Since the BPI Insureds contend that their alleged loss occurred in Massachusetts and that Clear Blue specifically directed its allegedly unfair trade practices at the BPI Insureds in Massachusetts, Clear Blue’s assertion that the center of gravity of its alleged misconduct was not in Massachusetts cannot be decided on the pleadings. Id.
Third, the counterclaim under G.L. c. 93A is not based on Clear Blue’s alleged breaches of contract. Instead, it is based on the allegations that Clear Blue engaged in unfair insurance claims handling and settlement practices. Claims
 
                                                            -10-
 
handling by an insurer falls within the scope of “trade or commerce” as defined in G.L. c. 93A, § 1(b). Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 78 (1977); Miller v. Risk Management Foundation of the Harvard Medical Institutions,  Inc.,  36 Mass. App. Ct. 411, 415–416 (1994). And allegations that an insurer or reinsurer refused to pay a claim by an insured business without having any good faith basis for doing so plausibly suggest that it engaged in unfair trade practices that violated c. 93A, § 11. See, e.g., Rass Corp. v. Travelers Cos., Inc.,  90 Mass. App. Ct. 643, 655–657 (2016); Commercial Union Ins. Co. v. Sevin Provinces Ins. Co., Ltd., 217 F.3d 33, 43 (1st Cir. 2000).
ORDER
The motion by Clear Blue Specialty Insurance Company to dismiss all counterclaims asserted against it (docket no. 19) is denied.